UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cr-20592-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JESUS ALBETO HERNANDEZ OSORIO,
LUIS VIDAL VASQUEZ VASQUEZ,
OSCAR JOSE CARRENO FERNANDEZ,
LUIS JOSE ALFONZO RODRIGUEZ

    Defendants.
_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS INDICTMENT

**THIS CAUSE** is before the Court upon Defendant Jesus Alberto Hernandez Osorio's ("Hernandez Osorio") Motion to Dismiss Indictment, ECF No. [18] ("Hernandez Osorio Motion")[1], and Defendant Oscar Jose Carreno Fernandez's ("Carreno Fernandez") Motion to Dismiss, ECF No. [19][2] ("Carreno Fernandez Motion") (collectively "Motions").[3] Plaintiff United States of America ("Government") filed an Omnibus Response in Opposition to the Motions, ECF No. [29] ("Response"), to which Hernandez Osorio and Carreno Fernandez each filed a Reply, ECF Nos. [33]-[34]. The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motions are denied.

---

[1] Defendant Oscar Jose Carreno Fernandez file a Motion to Adopt Co-Defendant Hernandez Osorio's Motion to Dismiss, ECF No. [22], which the Court granted, ECF No. [23].
[2] Defendant Jesus Alberto Hernandez Osorio filed a Motion to Adopt Co-Defendant's Motion to Dismiss, ECF No. [30], which the Court granted, ECF No. [32],
[3] Defendant Luis Vidal Vasquez Vasquez filed a Motion to Adopt Co-Defendants' Motions, ECF No. [20], which the Court granted, ECF No. [21].

Case No. 22-cr-20592-BLOOM

## I. BACKGROUND

According to the Criminal Complaint, on or about November 23, 2022, a Maritime Patrol Aircraft ("MPA") spotted a north-bound go-fast vessel ("GFV") approximately 108 nautical miles north of Aruba in international waters and upon the high seas. ECF No. [1] ¶ 3. The GFV had four individuals on board, numerous fuel barrels, packages visible on the deck, and did not display an indicia of nationality. *Id*. The HNLMS Holland with embarked Law Enforcement Detachment ("LEDET") 408 was in the area and was diverted to interdict and investigate. *Id*. United States Coast Guard ("USCG") District 7 assumed tactical control of HNLMS Holland and launched their Fast-Raiding Interception and Special Forces Craft ("FRISC") which embarked LEDET 408 boarding team and a helicopter to interdict. *Id*. The HNLMS Holland requested and was granted a Statement of No Objection to conduct a Right of Visit boarding from USCG District 7. *Id*.

Defendants Hernandez Osorio and Carreno Fernandez were onboard the vessel as well as Luis Vidal Vasquez Vasquez and Luis Jose Alfonzo Rodriguez (collectively "Defendants"). *Id*. ¶ 4. One of the Defendants claimed Columbian nationality, two claimed Venezuelan nationality, and the fourth claimed Dominican Republic nationality. *Id*. Accordingly, the GFV was treated as a vessel without nationality and subject to the jurisdiction of the United States. *Id*. A full law enforcement boarding ensued, and law enforcement officials recovered thirty-eight bales from the GFV. *Id*. ¶ 5.

The Government filed a Criminal Complaint in this case on December 5, 2022, finding probable cause to charge Defendants with conspiracy to possess with intent to distribute a controlled substance while onboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70506(b). S*ee generally id.* Defendants appeared for their initial

2

appearances before Magistrate Judge Lauren F. Louis on December 6, 2022. *See* ECF Nos. [3], [4], [5], [6].

On December 14, 2022, a grand jury sitting in the Southern District of Florida returned a two-count Indictment against Defendants charging each with conspiracy to possess with intent to distribute a controlled substance while on board a vessel subject to the jurisdiction of the United States, in violation of Title 46 U.S.C. §§ 70503(a)(1) and 70506(b) ("Count I"); and possession with intent to distribute a controlled substance while onboard a vessel subject to the jurisdiction of the United States, in violation of Title 46 U.S.C. §§ 70503(a)(1) and 18 U.S.C. § 2 ("Count II"). *See* ECF No. [7] ("Indictment").

Defendants now seek to dismiss the Indictment. Hernandez Osorio moves for dismissal of the Indictment for lack of jurisdiction because (1) the Maritime Drug Law Enforcement Act ("MDLEA") is unconstitutional as applied to the Defendants' alleged conduct and (2) the Government has not established that the GFV was without nationality as defined by the MDLEA. *See* ECF No. [18] at 2. Carreno Fernandez moves for dismissal of the Indictment because (1) the Government lacks subject matter jurisdiction; (2) the Netherlands conducted the law enforcement action rather than the United States; and (3) there is an absence of necessary nexus to the United States, due process and Constitutional violations.

The Government Responds that the MDLEA applies to Defendants' offenses on the high seas and may be enforced within a foreign nation's exclusive economic zone within the high seas; (2) subject matter jurisdiction has been established as the master or person in charge failed to make a claim for nationality for the vessel; (3) the United States has jurisdiction over stateless vessels with a United States Law Enforcement Detachment Team while on board a foreign flagged partner nation's vessel; (4) there is no nexus requirement for MDLEA prosecution of Drug Trafficking

3

Offenses and the exercise of jurisdiction over Defendants does not violate due process; and (5) Defendant's *Miranda* rights were not violated. *See generally* ECF No. [29].

I. **LEGAL STANDARD**

a. **Motion to Dismiss Indictment**

A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b). A defendant may challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, or constitutional reasons. *See United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012). "Under Fed. R. Crim. P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have developed at trial." *United States v. Torkington,* 812 F.2d 1347, 1354 (11th Cir. 1987). Further, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer,* 951 F.2d 306, 307 (11th Cir. 1992). "The indictment is sufficient if it charges in the language of the statute." *Id.* "Constitutional requirements are fulfilled 'by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime.'" *Id.* at 308; *see also United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985). The indictment's allegations are assumed to be true and are viewed in the light most favorable to the Government. *See Torkington*, 812 F.2d at 1354.

b. **MDLEA**

The Felonies Clause of the U.S. Constitution grants Congress the power to "define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations[.]" U.S. Const. art. 1, § 8, cl. 10. Pursuant to the Felonies Clause, Congress enacted the MDLEA, which makes drug trafficking on certain vessels in the high seas subject to the jurisdiction of the United States. 46 U.S.C. §§ 70501 *et seq.* The MDLEA applies to all cases

where the alleged trafficking occurs on a "vessel subject to the jurisdiction of the United States[.]" 46 U.S.C. § 70503(e)(1). The MDLEA further defines a vessel subject to the jurisdiction of the United States to include "(C) a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." 46 U.S.C. § 70502(d)(1)(C).

## II.  DISCUSSION

Defendants Hernandez Osorio and Carreno Fernandez now seek to dismiss the Indictment because (1) the MDLEA is unconstitutional as applied because the offense did not occur on the high seas; (2) the Government has not established that the GFV was without nationality; (3) the Netherlands conducted the law enforcement action rather than the United States; and (4) there is an absence of necessary nexus to the United States and due process and Constitutional violations. The Court considers each argument in turn.

### a.  Offenses Occurring on the High Seas

Defendant Hernandez Osorio argues that the United States' authority pursuant to the MDLEA is limited to offenses occurring on the high seas, and because these offenses took place within the Exclusive Economic Zone ("EEZ") of Venezuela, they did not occur on the high seas. *See* ECF No. [18] at 2-10. Hernandez Osorio reiterates that the Felonies Clause grants Congress the authority to "define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations" U.S. Const. art. I, § 8, cl. 10. According to Hernandez Osorio, Congress's power to "define" offenses against the law of nations means that Congress has the power "to codify and explain offenses that had already been understood as offenses against the law of nations[,]" not to "create or declare offenses against the law of nations." *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1249-50 (11th Cir. 2012). Following Hernandez Osorio's

logic, the same reasoning and limitations should apply to Congress's power to "define" felonies on the high seas. *See* ECF No. [18] at 7. Thus, Hernandez Osorio submits that the "high Seas" referenced in the Felonies Clause should be construed according to the definition of the high seas under customary international law. *See id.* at 8. Further, Hernandez Osorio posits that

> [u]nder customary international law as reflected in the 1982 United Nations Convention on the Law of the Sea . . . *the high seas means waters that are not the exclusive economic zone … territorial sea … or internal waters of the United States or any other nation.*

33 C.F.R. § 2.32(d) (emphasis added). As such, Hernandez Osorio argues that because the alleged offenses took place within the EEZ of Venezuela, they did not occur on the high seas, and the Indictment must be dismissed. *See* ECF No. [18] at 10-11.

The Government responds that the MDLEA may be enforced within a foreign nation's EEZ because an EEZ is not a part of a foreign nation's territorial waters but rather a part of the high seas. *See* ECF No. [29] at 3-8. The Government submits that a vessel outside the recognized twelve-mile limit of a nation's territorial seas is a "vessel located within international waters" and subject to MDLEA jurisdiction, even if the vessel is within a foreign nation's EEZ. *Id.* at 4-5 (citing *United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003); *United States v. Beyle*, 782 F.3d 159, 167 (4th Cir. 2015) (rejecting defense arguments that because the vessel was in an EEZ "he was not on the 'high seas' for the purposes of U.S. law"); *United States v. Rioseco*, 845 F.2d 299, 300 (11th Cir. 1988) (affirming a Lacey Act conviction and recognizing that a vessel stopped by the Coast Guard "within the Bahamas' exclusive economic zone" was in "an area of the high seas").

In Reply, Hernandez Osorio argues that the Government's reliance on *McPhee* is unavailing because the issue of whether waters located in an exclusive economic zone were on the high seas was not raised in *McPhee*. *See* ECF No. [33] at 1. According to Hernandez Osorio, the

6

"language describing the vessel as being in international waters, despite its location in an EEZ, was dicta" and "*McPhee*'s dicta is nether binding or persuasive here." *See id.* at 1-2. Further, Hernandez Osorio submits that the Government's reliance on *Rioseco*, 845 F.2d 299, is also misplaced because the statute at issue there, the Lacey Act, was not enacted pursuant to the Felonies Clause. *See id.* at 2. Hernandez Osorio also argues that to the extent the Government relies on *Beyle*, 782 F.3d 159, the Fourth Circuit's decision was based on policy concerns rather than meaningful constitutional analysis. *See id.* at 12. Therefore, Hernandez Osorio argues that the Fourth Circuit's policy-based decision is neither binding nor persuasive. *See id.*

The Court agrees with the Government. As the parties agree, the material question is whether the EEZ is a part of the high seas. Despite Defendants' contention, the Eleventh Circuit expressly stated in *McPhee* that if a vessel was outside the "twelve-mile Bahamian territorial boundary," then the vessel was "in international waters or at 'high seas' at that time." 336 F.3d at 1276. The fact that the Eleventh Circuit did not also consider whether the vessel was on the "high seas" as that term is defined for purposes of the Felonies Clause is inapposite, considering the Eleventh Circuit's holding that establishes that a vessel located beyond territorial waters was at high seas. *See id.* The Court declines Defendants' invitation to overlook binding precedent indicating that the EEZ beyond the twelve-mile territorial boundary is a part of the high seas.

Moreover, the Court notes that 33 C.F.R. § 2.32(c) expressly defines "high seas" – for the purposes of criminal enforcement jurisdiction pursuant to 14 U.S.C. § 522[4] – to include the "*exclusive economic zones of the United States and other nations*, as well as those waters that are seaward of territorial seas of the United States and other nations." 33 C.F.R. § 2.32(c) (emphasis

---

[4] Title 14 U.S.C. § 522 states, in relevant part, "[t]he Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States."

added). Thus, both controlling Eleventh Circuit precedent and federal regulations defining high seas for the purposes of enforcing the MDLEA define high seas as all waters seaward of any nation's twelve-mile territorial sea limit, including EEZs.

As such, Hernandez Osorio's Motion is denied as to this matter. Given binding Eleventh Circuit precedent and federal regulations, the Court need not address the Government's other arguments.

### a. Without Nationality

Defendant Hernandez Osorio argues that the Indictment must be dismissed because the Government failed to establish statutory jurisdiction. ECF No. [18] at 11. Defendant Carreno Fernandez also contends that the government has not met its burden of proving subject matter jurisdiction under one of the six grounds set forth in 46 U.S.C. § 70502(c)(1). ECF No. [19] at 7-8.

As stated above, Defendants in this case are charged with conspiracy to possess with intent to distribute a controlled substance while on board a vessel subject to the jurisdiction of the United States, in violation of Title 46 U.S.C. §§ 70503(a)(1) and 70506(b) ("Count I"); and possession with intent to distribute a controlled substance while onboard a vessel subject to the jurisdiction of the United States, in violation of Title 46 U.S.C. §§ 70503(a)(1) and 18 U.S.C. § 2 ("Count II"). *See* ECF No. [7]. A covered vessel is defined to include a "vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(e)(1). A vessel subject to the jurisdiction of the United States is further defined to include "a vessel without nationality." *Id*. § 70502(c)(1)(A). A "vessel without nationality" is

> (A) a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed;

>(B) a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforced applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and
>(C) a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

*Id.* § 70502(d)(1)(A)-(C).

Hernandez Osorio contends that the Government has not met its burden of demonstrating that the GFV was without nationality as defined by the MDLEA. ECF No. [18] at 12. Specifically, Hernandez Osorio asserts that the strict requirements of the statute were not met because the statements of USCG Officers Michael Roberts and Alex Wells do not demonstrate that Defendants "were specifically asked (1) if they were the 'individual in charge;' or (2) whether they wished to make a claim of nationality or registry for the vessel." ECF No. [33] at 8. Carreno Fernandez argues that if the Government takes the position that jurisdiction exists because nobody made a claim of nationality for the vessel the Government must prove that ground at an evidentiary hearing. ECF No. [19] at 7-8. The Government responds that USCG Officers Roberts and Wells inquired from all four Defendants "if anyone was the master or person in charge and if anyone wish to make a claim of nationality for the vessel. All four refused." ECF No. [29] at 9.

Hernandez Osorio relies on *United States v. Guerro*, 789 F. App'x 742, 750 (11th Cir. 2019) to support his contention that the USCG needed to comply with the strict requirements of the statute and failed to do so. In *Guerro*, the Eleventh Circuit determined that where the "Coast Guard never asked for the individual in charge and never requested the defendants to make a claim of nationality or registry for the vessel, the Government had not shown compliance "with the MDLEA's jurisdictional requirements." In that case, the Eleventh Circuit reasoned that "[a]ll the Coast Guard had to do here to establish statelessness, and thus jurisdiction, was to ask whether any of the defendants wished to make a claim of nationality or registry for the vessel" or alternatively,

9

"they could have established that none of the defendants were authorized to make such a claim for the vessel." *Id*. at 751 (citing *United States v. Prado*, 933 F.3d 121, 130 (2d Cir. 2019)).

Here, however, the Government has indicated that it supplied Defendants with the written statements of both USCG officers Wells and Roberts. Those statements reflect that the USCG inquired from all four Defendants if anyone was the master or person in charge and if anyone wished to make a claim of nationality for the vessel and all four refused. That questioning meets the requirement that the Eleventh Circuit articulated in *Guerro* – that the USCG must ask whether any of the Defendants wished to make a claim of nationality or registry for the vessel.

As to Carreno Fernandez's request for an evidentiary hearing on the issue of statutory jurisdiction, none of the Defendants have challenged the veracity of the written statements of the USCG officers provided by the Government in discovery. Carreno Fernandez does not cite any authority for the proposition that such an evidentiary hearing is required. To the contrary, the Eleventh Circuit has held that "[t]he Confrontation Clause does not bar the admission of hearsay to make a pretrial determination of jurisdiction when that hearsay does not pertain to an element of the offense." *United States v. Campbell*, 743 F.3d 802, 806 (11th Cir. 2014). In *Campbell*, the Eleventh Circuit found that "the stateless nature of Campbell's vessel was not an element of his offense to be proved at trial" so the admission of hearsay to determine jurisdiction "did not violate his right to confront witnesses against him." *Id*.; *see also United States v. Nunez*, 1 F.4th 976 (11th Cir. 2021), *cert. denied sub nom. Cedado Nunez v. United States*, 212 L. Ed. 2d 762 (2022) ("The Confrontation Clause does not require an evidentiary hearing because the Act makes clear that jurisdiction is a 'preliminary question of law to be determined solely by the trial judge'; it is not an element of the crime." (quoting 46 U.S.C. § 70504(a) (alteration adopted)); *United States v. Persaud*, 605 F. App'x 791, 795 (11th Cir. 2015) ("[T]he MDLEA provides that the United States'

10

jurisdiction over a vessel is not an element of the offense and that jurisdictional issues are preliminary questions of law to be resolved by the district court." (citing 46 U.S.C. § 70504(a)).

Accordingly, the Government has sufficiently set forth statutory subject matter jurisdiction because the GFV was without nationality.

### b. Netherlands Involvement

Carreno Fernandez argues that the Iindictment must be dismissed because the MDLEA cannot be applied where a foreign nation conducts a high seas drug interdiction with the USCG occupying a secondary role. ECF No. [19] at 4-6. The Government responds that the United States has jurisdiction over a stateless vessel when interdicted by a United States law enforcement detachment team aboard a foreign flagged partner nation's vessel. ECF No. [29] at 10. The Government argues that "[t]he evidence in this case reflects that while the official vessel that detected and pursued the [D]efendants was indeed Dutch, it was in fact United States Coast Guard officials who boarded the [D]efendants' GFV when it finally stopped, pursuant to agreements between the two partner nations." *Id*.

Carreno Fernandez does not provide any direct authority to support his position that the MDLEA cannot be applied where the USCG occupies a secondary role in an enforcement action. Instead, he cites two Eleventh Circuit cases that he contends may tangentially have bearing on this issue because they stand for the proposition that if United States Officials occupy secondary roles when another nation conducts a law enforcement operation, Constitutional protections do not apply. *See United States v. Odoni*, 782 F.3d 1226 (11th Cir. 2015); *United States v. Behety*, 32 F.3d 503 (11th Cir. 1994). In *Odoni*, the Eleventh Circuit said that the "Fourth Amendment generally does not apply to the actions of foreign officials enforcing foreign law in a foreign country." 728 F.3d at 1238. In *Behety*, the Eleventh Circuit said that "[t]he Fourth Amendment is

generally inapplicable to actions carried out by foreign officials in their own countries enforcing their own laws, even if American officials are present and cooperate in some degree." 32 F.3d at 510. The Eleventh Circuit further explained that the general rule has certain exceptions, including where "American law enforcement officials substantially participated in the search or if the foreign officials conducting the search were actually acting as agents for their American counterparts." *Id*. It appears that the exception would likely apply in this situation and even if it did not, Carreno Fernandez has provided no authority to support his contention that the MDLEA cannot be applied where a foreign nation conducts a high seas drug interdiction because any other result permits the Government to ignore due process and freely discard Constitutional guarantees. Moreover, Carreno Fernandez does not dispute the Government's assertion that the United States Coast Guard actually boarded the GFV, exercising a primary role in the enforcement.

The Government explains that "[d]rug traffickers are on notice, under the UN Convention Against Illicit Traffic and also under the MDLEA, that nations will "cooperate to the fullest extent possible to suppress illicit traffic by sea." Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, Dec. 19, 1988, 1582 U.N.T.S. 95, art. 17.1. The Government also cites to a case where this issue was not raised, but the Eleventh Circuit affirmed a conviction where the defendant was apprehended by USCG aboard a British naval ship. *Persaud*, 605 F. App'x at 793-94, 801; *see also United States v. Bertel*, 160 F. App'x 958 (11th Cir. 2005) (affirming sentence where a USCG detachment assigned to the Royal Dutch Naval vessel Willem Van Der Zaan removed the defendant challenging his sentence and others while the Dutch vessel's crew recovered 58 bales of cocaine).

Considering the lack of authority cited in support of Defendant's position and the fact that cases have proceeded on similar facts and been affirmed by the Eleventh Circuit, this Court is not

12

persuaded that the Indictment should be dismissed because the GFV was stopped by a USCG detachment traveling aboard a Dutch ship.

### c. Nexus to the United States and Due Process

Carreno Fernandez contends that MDLEA prosecutions do not comply with essential due process requirements that "a) a statute cannot be vague as to any of its material provisions; b) there must be a nexus to the United States before a person can be haled into a United States court and placed in jeopardy of his liberty; and c) before interrogation a defendant must be advised of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436 (1966)." ECF No. [19] at 8. The Court addresses each of the three challenges in turn.

#### i. Vagueness

First, Carreno Fernandez argues that the questions about "nationality" or "registry" are too vague to comport with due process. *Id*. at 12. The Eleventh Circuit has held that "[t]his challenge is unpersuasive, as the text of § 70502(d)(1)(B) is sufficiently clear to give ordinary people notice that, without a claim of nationality or registry for the vessel upon request, the vessel will be considered stateless for purposes of jurisdiction under the MDLEA." *United States v. Gruezo*, No. 22-11342, 2023 WL 2706261, at *6 (11th Cir. Mar. 30, 2023). Moreover, the Eleventh Circuit "has repeatedly rejected constitutional vagueness challenges to the jurisdictional provisions in the MDLEA's predecessors, as well as due process claims regarding the exercise of extraterritorial jurisdiction under the MDLEA." *United States v. Napa Moreira*, 810 F. App'x 702, 707 (11th Cir. 2020). Carreno Fernandez's due process challenge for vagueness therefore fails.

#### ii. Nexus

Next, Carreno Fernandez argues that "[t]here is no evidence there existed any "minimum contacts" between Carreno [Fernandez] and the United States." ECF No. [19] at 14-18. According

to Carreno Fernandez, the same 'minimum contacts' required in civil litigation "fulfill the need for a constitutionally-mandated 'nexus' between the United States and a defendant. *Id*. at 15. He concedes that the Supreme Court has yet to address whether a minimum contacts test applies to criminal statutes like the MDLEA. *Id*.

As Carreno Fernandez concedes, the Eleventh Circuit has rejected challenges to the MDLEA's constitutionality as applied to unregistered vessels on the high seas with no ties to the United States. *See, e.g.*, *United States v. Campbell*, 743 F.3d at 806; *United States v. Cruickshank*, 837 F.3d 1182, 1190 (11th Cir. 2016); *United States v. Estupinan*, 453 F.3d 1336, 1338 n.2 (11th Cir. 2006); *United States v. De La Garza*, 516 F.3d 1266, 1272 (11th Cir. 2008); *United States v. Rendon*, 354 F.3d 1320, 1325 (11th Cir. 2003); *United States v. Marino-Garcia*, 679 F.2d 1373, 1383 (11th Cir. 1982). The Eleventh Circuit has further held that "the Due Process Clause of the Fifth Amendment does not prohibit the trial and conviction of an alien captured on the high seas while drug trafficking, because the [MDLEA] provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas." *Campbell*, 743 F.3d at 812 (internal quotation marks and citations omitted). Further, "this [C]ircuit and other circuits have not embellished the [MDLEA] with the requirement of a nexus between a defendant's criminal conduct and the United States." *Id.* at 810 (citing *Estupinan*, 453 F.3d at 1338). Therefore, in light of binding Eleventh Circuit precedent, the Court need not proceed further, and Carreno Fernandez's Motion is denied as to this matter.

### iii. *Miranda* Rights

Finally, Carreno Fernandez argues that MDLEA violates Constitutional protections like those afforded to defendants under *Miranda v. Arizona*, 384 U.S. 436 (1966). He contends that a warning is necessary in MDLEA cases to advise a defendant that his silence can be used against

him because the fact that the USCG "did not have to give the [D]efendants this warning about the serious consequences of *not* making a claim of nationality or registry for the GFV leaps out as a blatant denial of well-established notions of fair play and fundamental due process." ECF No. [19] at 13-14 (emphasis in original). The Government responds that Defendants *Miranda* rights were not implicated when they were interdicted by the USCG outside of the United States. ECF No. [29] at 18-19.

As an initial matter, Eleventh Circuit precedent confirms the Government's position that the Defendants' *Miranda* rights were not implicated when the USCG conducted its right to visit. "This circuit has long recognized that the Coast Guard's routine stop, boarding and inspection of an American vessel on the high seas does not normally rise to the level of custodial detention thus requiring *Miranda* warnings." *Rioseco*, 845 F.2d at 302-03. The Court therefore turns to Carreno Fernandez's argument that a warning is necessary in MDLEA cases to warn a defendant that their silence when questioned about the nationality of their vessel can be used against them.

A court in this district considering the same argument held that "[i]n the absence of any previously recognized constitutional right to be informed of the consequences under § 70502(d)(1) associated with claiming a nationality of a vessel, the Court finds that *Miranda* does not remotely stand for the stated proposition." *United States v. Estupinan Padilla*, No. 1:21-CR-20327-KMM-3, 2022 WL 152535, at *5 (S.D. Fla. Jan. 18, 2022), *aff'd sub nom. Gruezo*, 2023 WL 2706261.

Here too, the Court declines "to create—for the first time—'protections like those afforded a defendant under *Miranda v. Arizona*, 384 U.S. 436 (1966)' for Title 46." *Id*.

## II.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motions, **ECF Nos. [18]** and **[19]**, are **DENIED.**

Case No. 22-cr-20592-BLOOM

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 11, 2023.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record